ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
AUG 29 2005
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **OGDEN SUPPORT SERVICES, INC.** and **COVANTA ENERGY CORP.**, Plaintiffs, v. **UNITED STATES OF AMERICA**, Defendant. | ) | No. 05-945C |

## COMPLAINT

Plaintiffs Ogden Support Services, Inc. ("OSSI") and Covanta Energy Corp. ("Covanta") (collectively, "Ogden") bring this action under the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq., and the Prompt Payment Act, 31 U.S.C. § 3901 et seq., seeking to recover various payments owed to Ogden under a series of contracts between Ogden and the Central Intelligence Agency ("CIA"). Specifically, Ogden challenges a final decision of the Contracting Officer dated September 16, 2004, denying its certified claim for those payments.

For its Complaint, Ogden alleges as follows:

## PARTIES

1. Plaintiff Ogden Support Services, Inc. is a Delaware corporation with its principal place of business in New York. During an extended period of time during the 1980s and 1990s, OSSI and its predecessor and affiliated companies entered into numerous contracts with the CIA and other federal agencies for the provision of various services.

2. Plaintiff Covanta Energy Corporation is a Delaware corporation with its principal place of business in New Jersey. Covanta is a wholly-owned subsidiary of Danielson Holding Corporation. Covanta is also the parent of OSSI and the parent or successor-in-interest of all entities which at any time held any interest in the contracts at issue in this action.

3. Ogden is currently undergoing a reorganization under Chapter 11 of the United States Bankruptcy Code. By Order dated October 28, 2003, the United States Bankruptcy Court for the Southern District of New York authorized Ogden to retain counsel for the purpose of submitting a claim under the Contract Disputes Act of 1978.

4. Defendant is the United States of America, acting through the Central Intelligence Agency ("CIA").

## JURISDICTION AND VENUE

5. Jurisdiction and venue are proper in this Court under the Tucker Act, 28 U.S.C. § 1491(a), and the Contract Disputes Act, 41 U.S.C. § 609(a)(1).

6. This action is timely filed, as Ogden received the Final Decision of the Contracting Officer on or about September 16, 2004 and this action is filed within one year from that date. *See* 41 U.S.C. § 609(a)(3).

## OGDEN'S PERFORMANCE UNDER THE CONTRACTS

7. Ogden entered into several contracts with the CIA in the 1980s and 1990s, pursuant to which Ogden performed various services for the agency. As relevant here, Ogden and the CIA entered into the following contracts, identified by contract number: 88-Z382200-000, 88-A398206-000, 87-Z276000-000, 90-Z880209-000, 89-Z693400-000, 90-Z781106-000, 90-Z805209-000, 90-K782006-000, 91-S933600-000, and 91-Z886000-000 (collectively, the

"Contracts"). The Contracts are subject to the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq.

8. Over the years, the CIA issued hundreds of payments to Ogden under the Contracts based on invoices submitted to the CIA by Ogden.

9. However, the CIA fell behind in post-performance audits of the Contracts.

10. During the course of the post-performance audits, the CIA and Ogden exchanged substantial documentation. One of the difficulties discovered by the parties was that the CIA, in making payment, sometimes combined multiple invoices into a single payment and sometimes failed to identify the particular invoices which were covered by individual payments.

11. After working together, the parties identified 139 invoices for which payment had been authorized by the CIA but which required further analysis to determine whether payment had been actually made.

12. From early 1996 onward, the CIA and Ogden worked cooperatively together to try to determine whether and when payment of the individual invoices had been made.

13. Over the years, the parties compromised and settled numerous post-performance audit issues, including the great bulk of the 139 invoices.

14. Finally, only 8 invoices remained unresolved. Despite repeated requests from Ogden, the CIA has failed to present any proof that these eight invoices had been paid.

15. The eight missing payments are:

| | Contract Number | Amount of Missing Payments |
|---|---|---|
| a. | 88-Z382200-000 | $ 381,543.95 |
| b. | 88-A398206-000 | 38,757.94 |
| c. | 87-Z276000-000 | 6,037.04 |
| d. | 90-Z880209-000 and 89-Z693400-000 | 20,483.94 |
| e. | 90-Z781106-000 | 114,330.88 |
| f. | 90-Z805209-000 and 90-Z781106-000 | 204,812.05 |
| g. | 90-K782006-000 | 583,135.00 |
| h. | 91-S933600-000 and 91-Z886000-000 | 112,368.26 |
| | **Total** | $1,461,269.08 |

16. After the dispute had been narrowed to the final eight invoices, the parties continued to work together to attempt to determine whether payment had been made. It is undisputed that the work was satisfactorily performed. It is undisputed that invoices were properly submitted. It is undisputed that the CIA authorized and intended to make payment on the eight invoices. The only question is whether payment for these eight invoices was ever received by Ogden.

17. After repeated and diligent search of its business records and banking records, Ogden has found no evidence of payment of any of the eight invoices. Despite repeated requests from Ogden and extensive correspondence between the parties, the CIA has never presented any proof that payment of the eight invoices has been made.

18. For a period of time, it appeared that the CIA was working in good faith to attempt to locate documentation to determine whether payment had been made. Ultimately, progress stopped and the CIA declined to take appropriate steps, such as seeking information from the Department of the Treasury to assist in determining whether payment of the eight invoices had been made.

19. With resolution of the other post-performance audit issues coming to a close and with decreasing cooperation in determining whether the eight invoices had been paid, Ogden submitted a formal, certified claim to the contracting officer on January 30, 2004, requesting a final decision pursuant to the Contract Disputes Act of 1978.

20. Ogden's claim requested payment of a sum certain — $1,461,269.08 — plus interest under the Prompt Payment Act.

21. Ogden's claim also contained the following certification pursuant to 41 U.S.C. § 605(c)(1):

> My name is Peter Allen. I am the Senior Vice President of Covanta Energy Corporation and the Senior Vice President of Ogden Support Services, Inc. and the parent or successor in interest of all entities which at any time held any interest in the contracts at issue in the attached claim. I am authorized to submit the certification of the claim required by the Contract Disputes Act of 1978.
>
> . . .
>
> I certify that the claim is made in good faith, that the supporting data is accurate and complete to the best of my knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable.

22. The Contracting Officer, Nancy A. Lindsay, denied Ogden's claim in its entirety in a Final Decision dated September 16, 2004.

**COUNT I**

23. Ogden incorporates the allegations contained in paragraphs 1 through 22 of this Complaint as though set forth fully herein.

24. Ogden fully and satisfactorily performed its obligations under the Contracts, earning its contract right to payment from the CIA.

25. The CIA owes Ogden $1,461,269.08 for services performed under the Contracts, plus interest as provided by applicable law.

26. By letter dated January 30, 2004, Ogden submitted a formal, certified claim for payment to the Contracting Officer.

27. The Contracting Officer denied Ogden's claim in its entirety in a Final Decision dated September 16, 2004.

**PRAYER FOR RELIEF**

WHEREFORE, Ogden respectfully requests that the Court:

1. Enter judgment in its favor and against the United States in the amount of $1,461,269.08, plus interest as provided under the Contract Disputes Act and/or the Prompt Payment Act.

2. Award costs, attorneys' fees, and such other and further relief as the Court may deem just and equitable in the circumstances.

Dated: August 29, 2005

Respectfully submitted,

Ronald K. Henry, Counsel of Record
Maria Whitehorn Votsch
KAYE SCHOLER LLP
901 Fifteenth Street, NW, Suite 1100
Washington, DC 20005
Telephone: (202) 682-3500
Facsimile: (202) 682-3580

*Attorneys for Plaintiffs*